**Edward Earl OWENS, Plaintiff,**

and

**St. Paul Fire and Marine Insurance Company, Intervenor,**

v.

**UNITED STATES of America, Defendant.**

**PCA No. 78–0421.**

United States District Court,
N. D. Florida,
Pensacola Division.

July 23, 1979.

D. L. Middlebrooks, Levin, Warfield, Middlebrooks, Mabie, Rosenbloum & Magie, P.A., Pensacola, Fla., for plaintiff.

H. Richmond Fisher, Torts Branch (Admiralty), Civ. Div., U. S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM DECISION

ARNOW, Chief Judge.

This is an action under the Suits in Admiralty Act, 46 U.S.C. § 741 et seq., arising out of an accident in which the pleasure craft Erma J II, owned by plaintiff Edward Earl Owens, struck a submerged, abandoned naval vessel, the USS Massachusetts. Plaintiff contends the accident was caused by negligence of Coast Guard personnel, agents of defendant, in failing to properly mark the Massachusetts and the nearby Caucus Channel.

Under the evidence presented, Mr. Owens had charted a course that should bring the boat to the number 1 sea buoy off Pensacola and Mr. Peyton, at Mr. Owens' request, took over the piloting at or about the time they left Mobile harbor. By the time the boat arrived in the vicinity of the sea buoy it was dark and bad weather had come up. Mr. Peyton did not see the buoy, went past it and then decided to keep going on an easterly course hoping to pick up a reference point on land. He did sight the lighthouse of the Naval Air Station and then decided to take a northwesterly course hoping to find the channel by so doing. He ended up, instead, finding buoy WR2 which was the marker for the Massachusetts. Assuming that it was the marker for the channel, he went around it in a course which he thought would place him in the channel and ran into the Massachusetts.

Under the evidence, Mr. Peyton did not use all the navigational equipment that was available to him when he arrived in the vicinity of sea buoy number 1 and, had he done so, he probably could have located the buoy at that time. Again, when he reached his reference point, had he used all the navigational equipment available to him, he probably could have fixed his location so that he would have been able to enter the channel. He did not use all the available navigational equipment on either occasion.

Contention was presented that, had black buoy number C3, one of the buoys marking the west side of Caucus Channel, been lighted, then on his northwesterly course Mr. Peyton would have seen that buoy and found his way into the channel and, further, that it was negligence of the government not to have the buoy lighted. Yet, under the evidence, the court need not concern itself with the question of whether it was negligence on the part of the government not to have C3 a lighted buoy. Under the weather conditions existing, Mr. Peyton was unable to see sea buoy number 1, which was lighted, even though his course was supposed to have brought him in close proximity to it. It does not appear that, had buoy number C3 been lighted, the estimated northwesterly course that Mr. Peyton took would have brought him into such close proximity with the buoy that he would have seen it in such bad weather.

When the boat arrived at what turned out to be the buoy marking the Massachusetts, Mr. Doman and Mr. Johnson were trying to determine the identity of the buoy as Mr. Peyton piloted the boat by. The boat was moving at approximately 15 knots and there was only a short time in which they could look. Mr. Doman told Mr. Peyton that he thought he saw an "O" and it seemed to him it must be buoy number 10. Mr. Peyton did not himself believe that it could be buoy number 10 because he did not feel that he was that close into shore. Nonetheless, he acted on the assumption that it was buoy number 10 and, for that reason, took the course that brought him into contact with the Massachusetts.

Mr. Peyton did slow down passing the buoy but he did not go back to try to check the identity of the buoy with more certainty. Under the evidence, common prudence required him to do so. Had he done so, it is also highly probable that he would have ascertained which buoy was involved. Mr. Johnson testified that he thought he saw the letter "W" on the buoy as they went by and that he said so. Mr. Peyton testified that, although he heard Mr. Doman, he did not hear Mr. Johnson make that statement. He also testified that if he had heard Mr. Johnson's statement he would have realized that this buoy was probably the one marking the Massachusetts and that he would not have taken a course that could have

brought him into collision with the Massachusetts.

█ The contention was presented that, had the buoy making the Massachusetts been much closer to the wreck, then, notwithstanding all of the foregoing, the accident would not have occurred and that failure to place the buoy closer to the wreck was negligence on the part of the government serving as the proximate cause of the accident. This contention involves the assumption that, had the buoy been within a short distance of the Massachusetts, Mr. Peyton, notwithstanding he had not recognized it was the one marking the Massachusetts, nonetheless, in making the turn around the buoy to get into what he thought was the channel, would have avoided the collision. From the evidence it is questionable whether that could have resulted. It would have depended on the nature and extent of his turn, the distance involved and other uncertain factors so that he might or might not have avoided the Massachusetts, even if the buoy had been closer.

In any event, however, there was here no negligence on the part of the government that was a contributing cause of the accident. The buoy was placed there to mark the location of the Massachusetts. It was not intended to deal with misidentification nor was the government required to assume that by misidentification someone would have an accident. That is what happened here. Mr. Peyton misidentified this marker. Had he recognized it as the marker for the Massachusetts, the accident would not have occurred.

█ The government is not an insurer of the safety of those upon the water. It could not have reasonably been expected to anticipate and foresee the possibility that through misidentification someone would have a collision with the Massachusetts and that, to avoid such possibility, it should place the buoy much closer to the Massachusetts so that there would be, in the event of misidentification, the further possibility that an accident would be avoided.

There was also testimony that in open water a buoy was normally placed further away from a wrecked vessel than it was in closed channel water and there was testimony that one of the reasons for the distance here was because the buoy also helped to mark a shoal nearby.

In any event, it was clear from the testimony that the people involved in this accident all were familiar with the area and knew, or should have known, the distance of the buoy from the Massachusetts. The distance really made no difference here because of the misidentification of the WR2. The distance was of concern only because of the contention that, had the buoy been closer to the wreck, then Mr. Peyton in turning would have avoided the Massachusetts.

There was some testimony presented by plaintiff to the effect that the buoy WR2 was covered with, or partially obscured by, bird droppings so that it was difficult to read the markings. However, Mr. Johnson testified he saw the letter "W". Under the evidence, certainly the buoy was not so obscured that had Mr. Peyton, in the exercise of ordinary seamanship, gone back to check he would have known it was the Massachusetts buoy.

Plaintiff contends that the port lights on the channel buoys should not have been white since they were confusing with the shore lights and that the buoy lights should always have been green, as they are now. However, there was no testimony presented that the shore lights in this particular factual situation caused any confusion. Mr. Peyton, navigating the Caucus Channel, did not even see any of the red lights upon the starboard side and there is nothing in the evidence to support any finding or inference that he would have seen the port lights even if they had been green.

There was some testimony that those aboard the boat had been drinking during the course of the trip but there was no evidence of intoxication on the part of Mr. Peyton. While his judgment might possibly have been impaired, the evidence is insufficient to warrant such a finding.

In short summary, it is clear beyond cavil that the sole proximate cause of this regrettable accident was misidentification and judgment errors on the part of Mr. Peyton and those endeavoring to assist him in navigation. There was no negligence of the defendant that was either the sole or a contributing proximate cause.

Judgment will be entered in accordance with the foregoing.